***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission REVERSES the Opinion and Award of Deputy Commissioner Holmes and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act and under the jurisdiction of the North Carolina Industrial Commission.
2. On August 2, 2000 an employee-employer relationship existed between plaintiff and defendant-employer.
3. On August 2, 2000, plaintiff's average weekly wage was $353.69, which yields a compensation rate of $235.80.
4. The North Carolina Insurance Guaranty Association was on the risk in the place of Reliance Insurance Company, the former carrier which is now liquidated. Currently, defendant-employer is self-insured, with Compensation Claims Solutions as the third-party administrator.
5. Plaintiff sustained a compensable injury by accident to his neck on August 2, 2000.
6. The Full Commission's Opinion and Award filed August 31, 2007 and the Full Commission's Order of August 28, 2008, are part of the evidence of record.
7. The issues for determination before the Full Commission are:
 a. Whether plaintiff's claim should be dismissed with prejudice for his failure to appear at the April 21, 2010 hearing in this matter;
 b. If plaintiff's claim is not dismissed, then whether plaintiff's medical treatment should be suspended for failure to comply with the Full Commission's Order of August 31, 2007, whether plaintiff is entitled to have temporary total disability compensation reinstated from October 19, 2007 to the present, as well as additional medical treatment, and whether *Page 3 
plaintiff is entitled to have an Industrial Commission nurse assigned.
 ***********
Based upon all of the competent, credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. This case has a lengthy history and has been the subject of a prior Full Commission Opinion and Award filed August 31, 2007, as well as a Full Commission Order on August 28, 2008. Some of the case history is repeated in the following findings of fact to facilitate an understanding of the procedural issues involved.
2. Plaintiff sustained a compensable injury to his neck on August 2, 2000. After his compensable injury by accident, plaintiff treated with Dr. Henry J. Elsner of Guilford Neurosurgical Associates, and had neck surgery on January 30, 2001 at C5-6 and C6-7. Plaintiff was released by Dr. Elsner on May 11, 2001, and referred to Dr. Albert Bartko, a physical medical specialist, for conservative pain management treatment. Dr. Bartko released plaintiff at maximum medical improvement on September 7, 2001. Plaintiff then began treatment with Dr. Hans Hansen, pain management physician.
3. On July 24, 2002, plaintiff was ordered by former Executive Secretary Tracey Weaver to comply with future reasonable vocational rehabilitation services. Plaintiff continued treating or getting opinions from multiple doctors including Dr. Jeffery Hooper, Dr. Mark Phillips, Dr. O. Del Curling, Dr. Gregory Crisp, and Dr. James Adelman. Dr. Phillips and Dr. Crisp eventually discharged plaintiff from their care due to plaintiff's inappropriate behavior. Plaintiff subsequently sought unauthorized treatment from Dr. Jerome Davis in August, 2005. *Page 4 
4. The Full Commission filed an Opinion and Award in this matter on August 31, 2007. In this Opinion and Award, the Full Commission ordered that plaintiff's temporary total disability benefits be suspended as of August 31, 2007 until plaintiff demonstrated full compliance with all reasonable medical and rehabilitative treatment provided by defendant. The Opinion and Award further gave defendant the right to direct medical treatment and noted that plaintiff's unjustified refusal to comply would bar plaintiff from further compensation until such refusal ceased. Defendant assigned a telephonic medical case manager and Industrial Commission nurse Emily McKinney was also assigned to assist the parties with medical treatment issues.
5. Plaintiff indicated his first choice regarding pain management programs was the Functional Restoration Program at Comp Rehab at Wake Forest University Baptist Medical Center and defendant agreed to authorize this program. Plaintiff's Quantitative Interdisciplinary Evaluation (QIE) was initially scheduled for January 15, 2008 and rescheduled for February 4, 2008 at plaintiff's request. The QIE recommended plaintiff participate in the Functional Restoration Program, but recommended that plaintiff be cleared initially by an orthopedic surgeon for his shoulder and have a cardiac stress test for cardiac clearance.
6. Plaintiff cancelled his initial cardiac clearance test scheduled for May 13, 2008 and rescheduled for a later date with Dr. Edward Hill, a neurologist. Plaintiff attended this appointment at which Dr. Hill gave plaintiff cardiac clearance to participate in the Functional Restoration Program. Plaintiff was then scheduled to see Dr. Hill regarding his neck concerns relative to his participation in the Functional Restoration Program, but plaintiff canceled his initial appointment on July 28, 2008. Defendant authorized this appointment pursuant to the Comp Rehab Program Director's recommendation in his June 10, 2008 letter that plaintiff have *Page 5 
an evaluation of his neck by a physician not associated with the program. Plaintiff's appointment could not be rescheduled until November 17, 2008, which was Dr. Hill's next available appointment after plaintiff missed the July 28, 2008 appointment.
7. Subsequently, on July 30, 2008, defendant filed a Motion seeking an Order suspending further medical treatment, after plaintiff continued to miss scheduled appointments and voiced his unwillingness to participate in the FRP, allegedly due to concerns about neck pain. On August 28, 2008, the Full Commission issued an Order again requiring plaintiff to fully comply with medical treatment that defendant had been attempting to provide since the filing of the Full Commission's August 31, 2007 Opinion and Award. The Full Commission's Order noted that plaintiff's actions over the past year had shown a continuous pattern of uncooperative and obstructive behavior that placed an unnecessary burden on defendant's attempts to provide the medical treatment that all parties agreed was necessary and helpful to plaintiff. In issuing this Order, the Full Commission ordered the parties to split the cost of "the unrelated wrist splints" and that "every effort be made by the parties to ensure plaintiff enters the Functional Restoration Program prior to the expiration of the cardiac clearance and without further delay as it is clear plaintiff has had every evaluation necessary for his attendance in the Program."
8. After plaintiff failed to appear for appointments and evaluations with Dr. Hill and Dr. Henry Elsner, defendant submitted another Motion to Terminate Medical Treatment in September 2009, due to plaintiff's continued pattern of uncooperative and obstructive behavior in violation of prior Orders of the Commission. This motion was made to Executive Secretary Weaver, who issued an Order dated December 9, 2009 referring the issues raised to be heard at a full evidentiary hearing pursuant to plaintiff's Form 33, Request for Hearing. Plaintiff's Form 33 indicated the parties had been unable to agree on past benefits due and assignment of a *Page 6 
primary care physician. Defendant responded via a Form 33R,Response to Request for Hearing, stating that the grounds for plaintiff's hearing request were not specific and questioning what past benefits were allegedly due.
9. Subsequent to defendant's motion, plaintiff missed his scheduled appointment on October 14, 2009 for his next QIE at Comp Rehab to continue the process for plaintiff to enter the Functional Restoration Program. The reason for this absence is not a part of the evidence of record. Plaintiff attended his first QIE on February 4, 2008. Twenty months had passed since the first QIE and plaintiff was still not participating in the Functional Restoration Program.
10. A hearing was originally scheduled before Deputy Commissioner Holmes on January 26, 2010 in Greensboro, but was continued at the request of plaintiff's counsel. Another hearing was scheduled on April 21, 2010, as requested by plaintiff. Plaintiff failed to appear before the Deputy Commissioner at the April 21, 2010 hearing despite the fact that plaintiff's name was listed as a witness by both parties in the Pre-Trial Agreement. Defendant was present and ready to proceed at the scheduled hearing time. According to plaintiff's counsel, plaintiff allegedly was not feeling well, but plaintiff failed to produce a doctor's note to explain his condition or why he was unable to attend the hearing. Plaintiff did not request a continuance in advance of the hearing. Defendant moved to dismiss plaintiff's claim with prejudice for his failure to prosecute his claim. The Deputy Commissioner denied defendant's motion to dismiss.
11. No testimony was taken at the hearing. The Deputy Commissioner decided the case on the record, which prevented defendant from cross-examining plaintiff and therefore addressing plaintiff's repeated failures to keep scheduled appointments and to comply with multiple Orders of the Commission. Plaintiff's failure to appear prejudiced defendant by *Page 7 
denying them the ability to properly investigate and defend this matter. Further, the Deputy Commissioner did not have the opportunity to judge plaintiff's credibility.
12. The Full Commission finds that plaintiff's failure to appear and prosecute his claim at the scheduled hearing on April 21, 2010 unreasonably delayed the prosecution of this matter. Further, the Full Commission finds defendant was significantly prejudiced by plaintiff's failure to prosecute, as defendant was present and ready to proceed at the scheduled hearing. Defendant has been prejudiced by having to pay for defense counsel's time preparing for hearing, for the time defense counsel spent drafting Motions and proposed Orders, and having to appear on April 21, 2010, when a hearing on the merits did not take place.
13. The Full Commission finds that plaintiff has failed to provide adequate or reasonable excuse for his absence at the scheduled hearing. Further, the Full Commission finds that dismissal of plaintiff's claim is warranted, as sanctions short of dismissal with prejudice will not suffice in this case. Lesser sanctions already imposed, such as suspension of benefits, have resulted in no change in plaintiff's behavior. Defendant's ability to defend this claim has been prejudiced by plaintiff's actions and inactions, and monetary damages incurred by defendant as a result of plaintiff's conduct could not reasonably be recouped even if ordered by the Commission. Any sanction short of dismissal will not satisfy the need for finality in this litigation and claim. Any sanction short of dismissal would also be unfair to defendant who has already dedicated significant time and resources to this claim.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 8 
1. Industrial Commission Rule 613 (1)(c) provides that "[u]pon proper notice and an opportunity to be heard, any claim may be dismissed with or without prejudice by the Industrial Commission on its own motion or by motion of any party for failure to prosecute or to comply with these Rules or any Order of the Commission."
2. Prior to dismissing a claim pursuant to Rule 613(1)(c), the Commission must consider the following: (1) whether plaintiff acted in a manner which deliberately or unreasonably delayed the matter, (2) whether defendant was prejudiced by the plaintiff's delay or failure to prosecute, and (3) the reason, if one existed, that sanctions short of dismissal would not suffice. Lee v.Roses, 162 N.C. App. 129, 590 S.E. 2d 404 (2004).
3. Plaintiff was given proper notice and opportunity to be heard in this matter. Plaintiff failed to appear at the hearing before the Deputy Commissioner and defendant was present and ready to proceed. Additionally, plaintiff missed an excessive number of scheduled appointments without excuse and was continually uncooperative, despite multiple Orders from the Commission, which resulted in the undue and unreasonable delay in the prosecution of this matter. Plaintiff's delay in prosecuting this matter by failing to appear at the hearing was deliberate and unreasonable. Lee v.Roses, supra.
4. Plaintiff's unreasonable delay in the prosecution of his workers' compensation claim prejudiced defendant. Jackson v.Flambeau Airmold Corp.,165 N.C. App. 875, 599 S.E. 2d 919 (2004); Lee v. Roses,supra. Defendant has been denied the opportunity to further investigate or defend this matter due to plaintiff's failure to appear at the hearing before the Deputy Commissioner. Therefore, defendant has been substantially prejudiced by plaintiff's delay and failure to prosecute his claim. Under these circumstances, sanctions short of dismissal *Page 9 
will not satisfy the need for finality and will not suffice, particularly given plaintiff's lengthy history of non-compliance and delay. Lee v. Roses, supra.
 ***********
Based upon the foregoing, the Full Commission enters the following:
 ORDER
1. Defendant's Motion to Dismiss plaintiff's claim for failure to prosecute is GRANTED and plaintiff's claim is hereby DISMISSED WITH PREJUDICE.
2. Each side shall bear its own costs.
This 7th day of March, 2011.
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ LINDA CHEATHAM COMMISSIONER
 S/__________________ DANNY LEE McDONALD COMMISSIONER *Page 1